UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA KLOSOWSKI,

                          CRIMINAL CASE NO.   12-CR-20458

       *Petitioner*,              CIVIL CASE NO.         15-CV-11316

*v.*

UNITED STATES OF AMERICA,    DISTRICT JUDGE THOMAS L. LUDINGTON
                                        MAGISTRATE JUDGE PATRICIA T. MORRIS

       *Respondent*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**(Docs. 41, 46, 58)**

## I.    RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that Respondent's motion to

dismiss **(Doc. 46)** be **GRANTED**; that Petitioner's motion under § 2255 **(Doc. 41)** be

**DENIED**; that Petitioner's motion to take judicial notice **(Doc. 58)** be **DENIED AS**

**MOOT**, and that this civil case be **DISMISSED**.

## II.    REPORT

### A.    Introduction and Background

Pending before this Court, pursuant to referrals entered by District Judge Thomas

Ludington on April 17, 2015, are Petitioner Joshua Klosowski's motion under 28 U.S.C.

§ 2255 to vacate his federal custodial sentence (Docs. 41, 44), Respondent United States

of America's motion to dismiss (Docs. 46, ), and Petitioner's motion to take judicial

notice. (Docs. 58, 59).

On July 20, 2010, Petitioner Joshua Klosowski was paroled from prison following a sentence for drug trafficking convictions. (Doc. 24 at 2). Shortly after release, Petitioner returned to drug distribution, making a total of nine heroin sales to three government informants in 2011 and 2012. (*Id*.). Petitioner was arrested on May 7, 2012, whereupon he was charged with conspiracy to distribute a controlled substance, to distribute a controlled substance in proximity to a school, among other charges. (*Id*.). In exchange for a guilty plea and agreement not to appeal his conviction, Respondent United States of America agreed to drop all but the first charge, *i.e.* conspiracy to possess with intent to distribute and to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846(b)(1)(B), and 860(a). (*Id*. at 1). The plea agreement specified that, in light of Petitioner's four prior felony drug convictions, and because of his status as a career offender, Respondent would recommend that the court impose a sentence between the low end of the guideline range (262 months), and the midpoint of that range (294.5 months). (*Id*. at 4). The plea agreement also notes that Petitioner would, as required by statute, be sentenced to a minimum of ten years of imprisonment followed by sixteen years of supervised release. (*Id*. at 5-6).

The plea agreement further provided that "the sentence of imprisonment in this case may not exceed the middle of the sentencing guideline range as determined by the court . . . nor fall below the low end of that range." (Doc. 24 at 5). Petitioner was permitted to withdraw if he was sentenced to a term of imprisonment greater than that provided for in the agreement (*i.e.* 294.5 months), and that Respondent would be permitted to withdraw if the sentence fell below 262 months. (*Id*. at 6).

On March 12, 2013, Petitioner pled guilty before District Judge Ludington pursuant to the aforementioned plea agreement. (Doc. 34). At that hearing, District Judge Ludington informed the petitioner that he would be surrendering certain rights by entering into the plea agreement, including the right to a trial by jury, to representation by his attorney, to use the court's subpoena power, to remain silent, and to testify in his own defense. (*Id*. at 9-10). Petitioner verified his understanding that he was foregoing these rights by pleading guilty. (*Id*. at 10). Petitioner explained that he was guilty of the charge because he "possessed and distributed heroin and co-conspired with others . . . to get rid of heroin, more than a hundred grams." (*Id*. at 16). Petitioner also stated that he used heroin, and began to sell heroin in amounts up to five grams to fund his habit. (*Id*. at 19). The court noted that Petitioner's guideline range was 262 to 327 months, and that the plea agreement set a "mid-point cap" of 294 months. (*Id*. at 7, 12-13). As to withdrawal rights, District Judge Ludington noted that neither party could "take a position concerning the applicable guideline range that is different than that contained in the [plea agreement]" and that "a violation of that provision by either party would entitle the non-breaching party to withdraw from th[e] agreement." (*Id*. at 12). Petitioner verified that he understood that he could not withdraw from plea agreement if he was sentenced to a term of imprisonment not exceeding 294.5 months. (*Id*. at 13-14). District Judge Ludington also noted that the plea agreement contained an appeal waiver providing that Petitioner could not appeal "[i]f the sentence imposed does not exceed the maximum allowed by this agreement." (*Id*. at 13-14). Finally, Petitioner stated that he was not coerced or bribed into taking the plea offer, that he understood the elements of the crime with which he was

charged, and that District Judge Ludington's explanation of the plea agreement was consistent with his understanding. (*Id*. at 12-15).

On June 13, 2013, Petitioner appeared before District Judge Ludington for sentencing; he was sentenced to a 262 month term of imprisonment (*i.e.* the minimum permitted by the plea agreement), followed by a sixteen year term of supervised release. (Doc. 35 at 25).

### B.    Petitioner's § 2255 Motion

On April 8, 2015, Petitioner filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 41). In that motion, Petitioner argues that his conviction should be vacated on two bases: 1) his attorney rendered ineffective assistance of counsel, and 2) his guilty plea was not made knowingly or voluntarily. (*Id*.). In his first ground for relief, Petitioner asserts that his trial attorney, Elias Escobedo, provided ineffective assistance specifically with regard to his "advice pertaining to the Plea Agreement itself" such that Petitioner did not understand the agreement, thus rendering his consent to it involuntary. (*Id*. at PGID 241). As a result of this allegedly ineffective assistance, Petitioner asserts that he believed "he could argue for a sentence of 120 months and that he could appeal the imposition of any sentence in excess of 120 months. (*Id*.).

In his second ground for relief, Petitioner expands on the theory that his attorney rendered ineffective assistance, stating that "[t]he record herein does indeed indicate that [Petitioner's] counsel either misunderstood the nature of the Plea Agreement, namely that a Rule 11(c)(1)(C) agreement was binding on the court as to stipulations concerning

sentencing . . . ." (Doc. 41 at PGID 242). In support of this theory, Petitioner notes that his attorney "argued that 18 USC §3553(a) allowed the court to disregard the higher sentencing range stipulated to in the Plea Agreement so as to impose a lower sentence of 120 months," "argued against application of the career offender enhancement," and "persisted in this line of objection at the Sentencing Hearing with no apparent acknowledgement . . . that the whole line was mooted by the 11(c)(1)(C) nature of the plea agreement," and that his counsel's "argumentation at Sentencing suggested that issues pertaining to the length of the sentence were open and subject to alteration by argument and, accordingly, appealable." (*Id*. at PGID 243). As a consequence, Petitioner asserts he "believed that the judge had the power to sentence me to the mandatory minimum of 120 [months]" and that his attorney "lied to me to get me to take [the] plea Agreement and he kept up the lie to [the] day I fired him." (*Id*.).

In his third ground for relief, Petitioner asserts that he was under the care of Dr. Harold Lenhart, a psychiatrist, when he signed the plea agreement. (Doc. 41 at PGID 245). Petitioner states that his attorney "came up to the Jail late at night after I had taken my Psy. Meds. . . . and lied to me and tricked me into signing the plea as I was in a paronaological [sic] drug-addled stuper [sic]. He knew I was on the drugs as I had tould [sic] him." (*Id*.). Petitioner supports this assertion by reference to a sworn affidavit, in which he avers that his attorney told him to respond in the negative when District Judge Ludington inquired as to whether he was under the influence of any drugs at the plea hearing. (Doc. 41 at PGID 245, Ex. G).

5

In his fourth ground for relief, Petitioner asserts that his attorney was "insisten[t] that [Petitioner] would only get 120 months" and would "have the right to appeal," and as a result he was "lied to and tricked into signing the plea," thus it was "not knowingly or voluntarily made." (Doc. 41 at PGID 246).

## C.   Analysis and Conclusion

### I.   Petitioners' § 2255 Motion was Timely Filed

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), established a one-year statute of limitations on 2255 petitions, which usually runs from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). When a § 2255 petitioner does not file an appeal, the judgment of conviction is final when the time for filing a notice of appeal expires. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); *United States v. Cottage,* 307 F.3d 494, 499 (6th Cir. 2002). According to Federal Rule of Appellate Procedure 4(b)(1), a defendant has fourteen days from the entry of judgment to file a notice of appeal. *Gillis v. United States*, 729 F.3d 641, 644 (6th Cir. 2013).

On April 29, 2015, Respondent filed a motion to dismiss Petitioner's § 2255 motion. (Doc. 46). Respondent argues that Petitioner waived his right to appeal his sentence, thus his conviction became final on the date his conviction was entered on the record: June 20, 2013. (*Id.* at 4-5). Respondent's syllogism operates as follows: "a judgment becomes final upon the expiration of the period in which the defendant *could have appealed to the court of appeals*"; Petitioner signed away his right to appeal his conviction per the terms of the plea agreement; thus Petitioner did not have the right to

appeal his sentence at all, and his conviction became final on the date it was entered. This is a novel line of argumentation, but not one which has found acceptance in this circuit. (*Id*. at 5-6).

Where a defendant who waived his right to appeal his sentence nevertheless pursues an appeal, courts in this circuit have found that the statute of limitations for filing a § 2255 motion runs from the last day on which the defendant could have appealed that decision to the Supreme Court, or alternately from the date on which the Supreme Court rejected the defendant's petition for certiorari. *See Stanton v. United States*, No. 3:13-CV-1446, 2014 WL 1665203, at *1 (M.D. Tenn. Apr. 25, 2014) (conviction became final when time for appealing ended, despite defendant's waiver of his right to appeal); *Pinkston v. United States*, No. 3:13-CV-0980, 2013 WL 6498031, at *2 (M.D. Tenn. Dec. 11, 2013) (same). Where a defendant waives his appellate rights and does not appeal, the conviction becomes final when the time for appealing expires. *See United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *2 (E.D. Mich. Sept. 30, 2015) ("Because Smith expressly waived his right to appeal his conviction and sentence in his Rule 11 Plea Agreement, the judgment of conviction became final on May 24, 2011, fourteen days after it was entered.").

Most courts around the country appear to have reached the same conclusion. In *United States v. Taylor*, No. CR 97-344-JO, 2000 WL 715916, at *2 (D. Or. June 5, 2000) an Oregon district court addressed an argument similar to the one made by Respondent as follows:

> The government appears to contend that because defendant waived his right of appeal, the judgment became final upon entry. The government cites no case law for that proposition, however, and the court's research suggests that where a defendant pleads guilty and waives the right of appeal, the judgment of conviction becomes final, for purposes of the AEDPA, upon expiration of the ten day period for filing appeals in criminal cases under Fed. R. App. P. 4(b). . . . The logic of these cases appears to recognize that *while a defendant may have waived the right to appeal, he or she nonetheless retains the power*; consequently, the finality of a judgment is not assured until the time for appeal has expired.

(emphasis supplied). *See also United States v. Taylor*, No. CR S-07-0071 KJM, 2011 WL 3667292, at \*2 (E.D. Cal. Aug. 22, 2011) ("Although movant waived his right to appeal his conviction and sentence, a judgment in district court is not final until the day after the time for filing of a notice of appeal has expired."); *Vargas v. United States*, No. CIVA4:09CV70110RBH, 2010 WL 1664452, at \*3 (D.S.C. Apr. 23, 2010) (same) *United States v. Moreno*, No. CIV.A. H-04-300, 2006 WL 1281085, at \*16 (S.D. Tex. May 5, 2006) (same); *Eckenrode v. United States*, No. EP-00-CA-027-DB, 2000 WL 33348759, at \*2 (W.D. Tex. Aug. 2, 2000) (same).

Here, Petitioner sought relief from the Sixth Circuit Court of Appeals, which issued an opinion affirming his conviction on April 16, 2014. (Doc. 40). Petitioner did not seek review by the Supreme Court, thus his conviction became final when the ninety-day period for seeking review from that court expired, on July 16, 2014. *See Clay v. United States*, 537 U.S. 522, 532 (2003). Counting from that date, and pursuant to the one-year statute of limitations established by AEDPA, Petitioner was obligated to file his § 2255 motion by July 16, 2015. Because Petitioner's motion under § 2255 was filed on

April 8, 2015, it is well within the one year statute of limitations, and is thus timely. (Doc. 41).

## II.     Evidentiary Hearing Standard

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993). Where a Court finds that there is no material factual dispute which a hearing could address, the § 2255 motion

should be dismissed. The Court will thus examine whether any such material factual disputes exist.

### III.   Issues Already Determined

Although res judicata does not apply in § 2255 proceedings, "the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in prior § 2255 proceedings." *Taylor v. United States*, 798 F.2d 271, 273 (7th Cir. 1986). The Supreme Court has found that "claims will ordinarily not be entertained under § 2255 that have already been rejected on direct review." *Reed v. Farley*, 512 U.S. 339, 358 (1994). On the other hand, claims which could have been raised on direct appeal, but were not, are considered procedurally defaulted on indirect appeal unless the petitioner can show either i) cause and actual prejudice to excuse this failure, or ii) actual innocence. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

Here, Petitioner raised in his direct appeal to the Sixth Circuit the argument that his plea was made involuntarily and unknowingly. That court found that "[t]o the extent Klosowski argues his plea was unknowing or involuntary, this is not supported by the record. The district court complied with Rule 11, Klosowski had a partial college education and had previously entered guilty pleas to other offenses, and his agreement clearly spelled out his potential sentence." (Doc. 40 at 2). Because the issue of whether Petitioner's plea was made voluntarily and knowingly was decided on direct appeal, the Court will not reconsider it in this § 2255 proceeding. The Court will thus not consider Petitioner's assertions that he was under the influence of mind altering narcotics at the

10

time he signed the plea and at the plea hearing, nor will it consider his assertion that his

attorney pressured him to accept the plea agreement.

The Sixth Circuit declined, based on longstanding policy, to hear Petitioner's

ineffective assistance of counsel claim on direct appeal, leaving the task for indirect

appeal. (Doc. 40 at 3); *United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998).

Petitioner's assertion that his attorney provided ineffective assistance is thus properly

before this Court.

### IV.    Appellate Waiver and Ineffective Assistance of Counsel

Respondent argues that the Court should not consider the substance of Petitioner's

claim, but rather should dismiss this action because Petitioner waived his right to appeal

under the plea agreement. (Doc. 46 at 8-10). Respondent notes that courts throughout this

circuit have "repeatedly enforced similar collateral attack waivers." (*Id.* at 8). While this

is true as a general proposition, the Sixth Circuit has recognized that "where a defendant

argues that his plea . . . was the product of ineffective assistance of counsel . . . it would

be entirely circular for the government to argue that the defendant has waived his right to

an appeal or a collateral attack when the substance of his claim challenges the very

validity of the waiver itself." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). Because

Petitioner alleges that he plead guilty as the result of ineffective assistance of counsel, the

Court must examine these claims in further detail. (Doc. 41 at PGID 241-48).

Petitioner alleges that his plea was the product of ineffective assistance of counsel,

particularly insofar as he was misled to believe that he could receive a 120 month

sentence and that his conviction would be appealable. However, as noted above, the Sixth

Circuit has conclusively determined that Petitioner's plea was made voluntarily and knowingly. (Doc. 40 at 2). It is difficult to reconcile the concepts that a prisoner made a plea knowingly (*i.e.* with a full understanding of the impact of his plea) and voluntarily (*i.e.* without coercion), yet nevertheless received ineffective assistance of counsel. Indeed, where a plea is found to have been made knowingly and voluntarily, some courts have concluded that this finding creates "[t]he necessary implication . . . that [the prisoner] had received effective assistance of counsel." *Agtas v. Whitley*, 637 F. Supp. 1476, 1483 (D. Nev. 1986) aff'd, 836 F.2d 1233 (9th Cir. 1988); *but see United States v. Allen*, No. CIV. 07CV1216, 2008 WL 1805815, at *3 (S.D. Cal. Apr. 21, 2008) ("The record suggests that Petitioner's waiver was made knowingly and voluntarily, but because Petitioner claims that his plea agreement was made based on ineffective assistance of counsel, the Court must review the substance of Petitioner's claims.").

Petitioners may waive ineffective assistance of counsel claims, provided that the waiver is made knowingly and voluntarily. *See Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) ("When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255."); *Hobson v. United States*, No. 2:04-CV-365, 2007 WL 2955587, at *2 (E.D. Tenn. Oct. 9, 2007) ("A provision in a plea agreement waiving the right the file a § 2255 motion is an enforceable waiver, even as to claims of ineffective assistance of counsel, so long as the waiver is done knowingly, intelligently and voluntarily."). Here, the plea agreement specifically states that "defendant knowingly and voluntarily waives all such rights [to appeal] and

agrees not to contest his conviction or sentence in any post-conviction proceeding, including, but not limited to, any proceeding under 28 U.S.C. § 2255." (Doc. 24 at 7). Thus, because the Sixth Circuit found that Petitioner's plea was made knowingly and voluntarily, the waiver provision is effective, thus Petitioner may not bring an action contesting that he received ineffective assistance of counsel.

### V.    Petitioner's Ineffective Assistance Claim Fails on the Merits

Even if Petitioner had not bargained away his right to raise ineffective assistance of counsel claims on appeal, it would fail on the merits. Claims of ineffective assistance of counsel are governed by the Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense–not what bears a false label of 'strategy'–based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 694. Failure

to make the required showing under either prong of the Strickland test defeats the claim. *Id*. at 700.

Petitioner asserts that his attorney incorrectly predicted that he would receive 120 months (Doc. 41 at PGID 242, 246), and led him to believe that the sentence was appealable (*Id*. at PGID 243). This allegation finds some support in the record. Petitioner's trial counsel requested that District Judge Ludington ignore the terms of the plea agreement. In his sentencing memorandum, Petitioner's counsel argued for the imposition of "[a] sentence sufficient but not greater than necessary to meet the requirements of § 3553(a)," which he suggested was "120 months, the statutory minimum." (Doc. 25 at 13). In his allocution at the sentencing hearing, Petitioner's counsel noted that he had objections to the "substantive unreasonableness and the procedural unreasonableness of the application . . . of the guidelines," and thus suggested that "the courts must use some form of discretion [to] . . . rectify . . . the unfairness and injustice of the career offender guideline." (Doc. 35 at 6, 14). Petitioner's attorney further stated that he "recognize[d] that we entered into this [plea] agreement with the government and I'm not trying to deny that," but nevertheless asserted that "there has to be some . . . equity, some fairness and some balance in the application of the guidelines in relation to the 3553(a) factors, and most importantly, in relation to Joshua Klosowski, as an individual, as a citizen." (*Id*. at 15). Petitioner's counsel concluded by noting "[a]gain, it's my position that . . . a fair sentence for this young man, would be 120 months in federal prison and that's no light sentence." (*Id*.). Had District Judge Ludington applied this recommended sentence, it would have breached the terms of the

plea agreement, which provided for a term of imprisonment of between 262 months and 294.5 months, and permitted Respondent to withdraw from the agreement if Petitioner was sentenced to less than 262 months of imprisonment. (24 at 5-7). As a result, Respondent could have pursued the other eleven charges brought against Petitioner, potentially resulting in a far longer prison sentence.

Even assuming that Petitioner's attorney incorrectly informed him that he might receive a ten year sentence under the plea agreement, this mistake would not support an ineffective assistance claim. A counsel's erroneous sentencing predictions generally are not grounds for ineffective assistance claims. *See United States v. Hicks*, 4 F.3d 1358, 1363 n. 3 (6th Cir.1993) ("[I]t is well settled that a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea."); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("[A] mere inaccurate prediction, standing alone, would not constitute ineffective assistance. . . ."); *United States v. Quintilliano*, No. Crim A. 81–000260(01), 1986 WL 5817, at *2 (E.D. Penn. May 19, 1986) (collecting cases holding "that an erroneous prediction of a sentence by a defendant's counsel does not render a guilty plea involuntary."). This is particularly true where Petitioner was informed in the plea agreement and at the plea hearing that he would receive between 262 and 294.5 months of imprisonment. (Doc. 24 at 5, 34 at 11). Petitioner confirmed at the plea hearing that the plea agreement was described accurately and that nothing was missing from that description. (Doc. 34 at 15).

It is perhaps arguable that Petitioner's counsel did more than merely predict sentencing outcomes, in that he actually argued for a sentence below that permitted by

15

the plea agreement, rather than merely rendering advice to the accused about the sort of sentence he might receive if different scenarios played out. However, this is ultimately irrelevant because Petitioner also cannot satisfy the second prong of the Strickland test, which requires that, but for his counsel's alleged errors, the outcome would have been favorably different. *See Strickland*, 466 U.S. at 688. In this case, Petitioner was faced with a twelve-count indictment charging him with the violation of a variety of federal drug regulations, with charges three through twelve each carrying the possibility of a sentence of between five and forty years of imprisonment. (Doc. 11). Petitioner has not even suggested that, but for his attorney's advice, he would have chosen to go to trial or hold out for a more favorable plea offer. Indeed, as suggested by Respondent in its sentencing memorandum, Petitioner "should consider himself fortunate to be eligible to receive a guideline sentence of 262 to 327 months" given the numerosity and seriousness of the charges against him. (Doc. 26 at 4). Petitioner was informed at the plea hearing of his right to proceed to a trial before a jury with the assistance of his attorney, but he wisely chose to accept the plea agreement. (Doc. 34 at 9-10). Petitioner has made no effort at demonstrating that he could have obtained a more favorable outcome but for his attorney's advice, therefore his argument that his attorney provided ineffective assistance of counsel also fails the second prong of the *Strickland* test.

The Court thus finds that Petitioner's allegations in his § 2255 motion cannot be accepted as true for several reasons. First, the Sixth Circuit's finding that Petitioner knowingly and voluntarily entered into the plea agreement can be read to dispositively resolve the accusation that his attorney provided ineffective assistance of counsel.

Second, because Petitioner entered into his plea agreement knowingly and voluntarily, it operates to bar any appellate challenges which he may now wish to raise, including ineffective assistance of counsel claims. Third, even if the appeal waiver was not in effect, Petitioner's allegations regarding his attorney's inaccurate sentencing predictions does not create a cause of action for ineffective assistance of counsel claims. Fourth, Petitioner has not attempted to show (and likely cannot show) that, but for his attorney's advice, he would have obtained a more favorable outcome.

### VI.    Motion to Take Judicial Notice of Jailhouse Attorney

On July 24, 2015, Petitioner filed a "motion to take judicial notice of pro se / jailhouse lawyers [sic] 90 & 120 day stay motions in light of the courts [sic] order of June, 29 2015." (Doc. 58). District Judge Ludington referred that motion to the undersigned on July 28, 2015. (Doc. 59).

In that motion, Petitioner notes that he and a fellow inmate who is acting as his advisor on legal matters were confined to a special housing unit for a period of time, and that his advisor filed his response to Respondent's motion to dismiss on Petitioner's behalf. (Doc. 58). Petitioner also notes that he is unable to "opporate [sic] all on my own," and that he needs assistance in preparing his legal claims. (*Id*.). It is unclear why Petitioner desires that the Court take judicial notice of these allegations. In any case, these assertions are not "generally known within the trial court's territorial jurisdiction" and cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and thus are not appropriate for judicial notice. Fed. R. Evid. 201(b)(1)-(2). In so far as he seeks appointment of an attorney, the Court notes that there

17

is no right to counsel in the prosecution of § 2255 motions. *See Brown v. United States*, 20 F. App'x 373, 375 (6th Cir. 2001). Because the Court recommends denial of Petitioners § 2255 motion and dismissal of this civil case, Petitioner's motion for judicial notice is moot.

### D.     CONCLUSION

For the reasons stated above the Court **RECOMMENDS** that Respondent's motion to dismiss **(Doc. 46)** be **GRANTED**, Petitioner's motion under § 2255 **(Doc. 41)** be **DENIED**; Petitioner's motion to take judicial notice **(Doc. 58)** be **DENIED AS MOOT**, and that this civil case be **DISMISSED**.

### III.    REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any

objection must recite precisely the provision of this Report and Recommendation to

which it pertains. Not later than 14 days after service of an objection, the opposing party

may file a concise response proportionate to the objections in length and complexity. Fed.

R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to Objection

No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date: February 12, 2016                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date
through the Court's CM/ECF system which delivers a copy to all counsel of record.  A
copy was also sent via First Class mail to Joshua Edmond Klosowski #47519039 at Pekin
Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 5000, Pekin, IL 61555.

Date: February 12, 2016                    By s/Kristen Krawczyk
                                           Case Manager