UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         Case No. 1:12-cr-20458

v.                                              Honorable Thomas L. Ludington
                                                    United States District Judge

JOSHUA EDMOND KLOSOWSKI,

        Defendant.
_____/

**OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION TO AMEND; (2) DENYING DEFENDANT'S MOTION FOR APPOINTED COUNSEL AS MOOT; AND (3) DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant Joshua Klosowski is currently serving a 262-month sentence for conspiring to distribute heroin. In early 2024, this Court denied Defendant's motion for sentence reduction under Amendment 821 but, in so doing, recognized that this Amendment reduced his criminal history score by one point, from 15 to 14. Defendant now seeks an amended PSR reflecting this reduced score because, although it does not modify his sentence, it affects certain conditions of his confinement. This Motion will be denied, but the Court will clarify Defendant's reduced criminal history score and forward this Opinion & Order to Defendant's case manager to ensure the Bureau of Prisons has a record of it, too. Defendant's ancillary motion for appointed counsel on this issue will be denied as moot.

Separately, Defendant seeks compassionate release. But, as explained below, he has not shown any extraordinary or compelling reasons warranting his release, which is otherwise unsupported by the 18 U.S.C. § 3553 sentencing factors. So this motion will be denied.

I.

In March 2013, Defendant Joshua Edmond Klosowski pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute 100 grams or more of heroin within 100 feet of a school, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and 860(a). *See* ECF No. 24; 28 at PageID.130. Defendant agreed to the following factual summary, as outlined in his Rule 11 Plea Agreement:

> Despite having been incarcerated for at least two prior felony drug trafficking convictions, [Defendant] promptly resumed his position in a drug trafficking network upon being paroled by the State of Michigan on July 20, 2010. While on parole, he made a total of nine heroin sales to three different informants during controlled buys conducted between October of 2011 and May of 2012 in various Bay and Saginaw County locations. He also agreed to sell heroin to a co-conspirator on October 3, 2011, but the presence of person unknown to [Defendant] in the car with the co-conspirator apparently scared [Defendant] away. (Though unknown to [Defendant] and the co-conspirator, the third person was actually an undercover officer.)
>
> [Defendant] was arrested on May 7, 2012, after the last controlled buy in the investigation that resulted in this prosecution, because [Defendant] was about to consume heroin while behind the steering wheel of a vehicle that was also occupied by [Defendant]'s then ten-month old child. (The presence of the child had a tendency to deflect suspicion away from [Defendant] while he was engaged in the drug trafficking and use.) [Defendant]'s supplier . . . was also arrested on May 7, 2012, after he separated from [Defendant] and the informant following the last controlled buy. [The supplier] had $600 of the buy money in his possession, and [Defendant] had the remaining $50 from that controlled buy. Additional heroin was also found after the arrests.
>
> [Defendant] dictated to his customers the locations and the terms of the heroin transactions he had with them, usually using a telephone to communicate his directives. On two occasions known to law enforcement, [Defendant] sold heroin within 1000 feet of a school in Bay City, Michigan. He also actively recruited new customers and took steps to keep established customers using heroin when those customers were attempting to stop using heroin.
>
> [Defendant] obtained heroin from multiple sources during the charged conspiracy. He frequently recruited members of the conspiracy to drive him to locations in the Eastern and Western Districts of Michigan where he met with people who supplied him with heroin and other drugs for distribution to his customers and for his own use. [Defendant]'s source in the Lansing area supplied him with approximately a

>kilogram of heroin. His heroin source in Saginaw . . . supplied [Defendant] with more than 100 grams of heroin. [Defendant] also obtained heroin in the Detroit area. [Defendant] use[d], stored and distributed heroin and other controlled substances from his residence in Bay County.

ECF No. 24 at PageID.59–60.

On June 20, 2013, this Court sentenced Defendant as a career offender to 262 months of imprisonment, to be followed by 16 years of supervised release. ECF No. 28 at PageID.131–32. The Sixth Circuit dismissed Defendant's subsequent appeal, finding Defendant waived his appellate rights in his Plea Agreement. *See* ECF No. 40. In April 2015, Defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. ECF No. 41. This Court denied that motion in April 2016. ECF No. 68. Defendant filed notice of an appeal, but the Sixth Circuit denied a certificate of appealability. *See* ECF No. 78.

Fast-forward to 2024. On January 17, 2024, Defendant filed a motion to reduce his sentence given the Sentencing Commission's 2023 Criminal History Amendment—commonly known as "Amendment 821." ECF No. 82. Amendment 821 had two parts. *See* ECF No. 93 at PageID.937. Before Amendment 821, a defendant who committed the instant offense while under another sentence, or term of supervised release, probation, or parole, received *two* additional criminal history points under U.S.S.G. § 4A1.1. *See id.* at PageID.938. But Part A of Amendment 821 amended § 4A1.1 such that (1) any defendant who had six or fewer criminal history points at sentencing would receive *no* additional points for committing the instant offense while under another sentence, and (2) any defendant who had seven or more criminal history points would only receive *one* additional point. *See id.* Part B of Amendment 821, on the other hand, added a new section to the Guidelines—§ 41C.1(a)—which reduces a defendant's offense level by two if the defendant satisfied 10 qualifying criteria, the first of which is that the defendant had no criminal history. *See id.* at PageID.938.

In August 2024, this Court denied Defendant's motion for sentence reduction. ECF No. 93. Although Part A reduced Defendant's § 4A1.1 assessment from *two* points to *one* point—thus decreasing his criminal history score from 15 to 14—this 1-point reduction did not alter his Guideline range because a criminal history score of 14 still placed him, in category VI, which was otherwise controlled by his career offender status. *Id.* at PageID.939–40. And Defendant was not eligible for reduction under Part B because he had more than zero criminal history points when he was sentenced. *Id.* at PageID.940.

Defendant, proceeding *pro se*, now seeks an order from this Court directing "the Probation office to amend his" presentence investgiation report (PSR) to reflect the fact that—consistent with this Court's Amendment 821 denial—he should only be assessed one additional criminal history point under § 4A1.1, and that his resulting criminal history score is 14, not 15. ECF No. 97. And Defendant subsequently filed a motion for appointed counsel to assist with his PSR-amendment motion. ECF No. 96. Separately, Defendant filed a motion seeking compassionate release under 18 U.S.C. § 3582. Each motion will be addressed in turn.

## II. Defendant's Motion to Amend his PSR

Defendant filed his *pro se* Motion to Amend on November 5, 2024. ECF No. 97. The Government did not respond or otherwise oppose the relief Defendant seeks. And Defendant's motion is well taken. As this Court held in its August 2024 Order, although Amendment 821 did not reduce Defendant's *sentence*, it did reduce his *criminal history score* by one point—from 15 to 14. But Defendant's current PSR does not reflect this reduction. *See* PSR ¶¶ 44–45 (noting the outdated 2-point assessment under § 4A1.1). As Defendant explains, his criminal history score "impacts the programs and credits he is able to receive" while confined. ECF No. 97 at PageID.961. Although this Court will deny the motion and will not direct the Probation

Department to amend Defendant's PSR, it will forward a copy of this Opinion & Order—as well as the Opinion & order denying Defendant's Amendment 821 request—to Defendant's case manager to ensure that the Bureau of Prisons recognizes his reduced criminal history score of 14. Defendant's ancillary motion seeking appointed counsel to assist him in securing this relief will be denied as moot.

### III. Defendant's Motion for Compassionate Release

Defendant next seeks compassionate release under 18 U.S.C. § 3582. ECF No. 87. But Defendant has not shown any extraordinary and compelling reasons warranting his release, and his release is otherwise unsupported by the § 3553 sentencing factors. So his motion will be denied.

### A. Legal Standard

A sentence is a final judgment, and district courts generally lack the authority to modify sentences after they are imposed. 18 U.S.C. §§ 3582(b)–(c). Yet 18 U.S.C § 3582(c)(1)(A) provides an exception to this "rule of finality" prohibiting sentence modification "in limited circumstances," known broadly as "compassionate release." *United States v. Lee*, No. 18-20198, 2024 WL 1508826 (E.D. Mich. Apr. 5, 2024) (citing *United States v. Hunter*, 12 F.4th 555, 561, 569 (6th Cir. 2021)). In assessing motions for compassionate release, Courts within the Sixth Circuit proceed with a threshold question, followed by a three-tiered analysis.

As a threshold issue, reviewing courts must assess whether the defendant has "satisfied the administrative exhaustion requirement of the First Step Act." *United States v. Allison*, No. 2:21-CR-20436-TGB-EAS, 2024 WL 3012780, at *2 (E.D. Mich. June 14, 2024). Indeed, courts cannot review defendant-filed motions for compassionate release until the defendant "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [(BOP)] to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If a defendant exhausted his administrative remedies, reviewing courts proceed to assess whether the defendant has shown both (1) "extraordinary and compelling reasons" which warrant a sentence reduction and (2) that the requested reduction is "consistent with" applicable United States Sentencing Commission policy statements. *See* 18 U.S.C. § 3582(c)(1)(A). If satisfied that extraordinary and compelling reasons warrant a reduced sentence, and that a reduction is consistent with applicable policy statements, reviewing courts (3) turn to the factors promulgated in 18 U.S.C. § 3553(a) to determine whether the reduction authorized by statute is "warranted in whole or in part under the particular circumstances of the case." *Dillon v. United States*, 560 U.S. 817, 827 (2010). Each facet of this analysis will be addressed in turn.

### B. Exhaustion

The Government concedes that Defendant "has satisfied" the threshold exhaustion requirement.[1] ECF No. 92 at PageID.881. So this Court will turn to the merits.

### C. Extraordinary and Compelling Circumstances

Defendant's motion for compassionate release fails on the merits. He has not identified any "extraordinary and compelling" reason for his release.

---

[1] Yet the Government's concession is seemingly unsupported. True, the Warden of Defendant's place of confinement wrote Defendant a letter on December 1, 2023, denying Defendant's internal request for compassionate release. *See* ECF No. 92-4 at PageID.928. But the letter expressly informed Defendant that he "may appeal" the warden's denial "through the [Bureau of Prisons'] Administrative Remedy Program." *Id.* Defendant has not shown he availed himself of this administrative appeal, and such is "necessary for full exhaustion." *United States v. Anderson*, No. 1:13-CR-20704-2, 2024 WL 5004321, at *4 (E.D. Mich. Dec. 6, 2024) (citing 18 U.S.C. § 3582(c)(1)(A)).

Defendant seizes on the Sentencing Commission's November 2023 amendment to its policy statement in U.S.S.G. § 1B1.13(b)(6), which provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

But—after Defendant filed his motion for compassionate release—the Sixth Circuit recently held that § 1B1.13(b)(6) is entirely "invalid" because (1) the Sentencing Commission exceeded its delegated authority in promulgating it and, (2) it violated separation-of-powers principles by "forcing a judge to accept the Commission's interpretation of a law . . . and by transferring the judiciary's interpretive judgment to the Commission." *United States v. Bricker*, 135 F.4th 427, 435–49 (6th Cir. 2025) (internal quotations omitted). Defendant's motion for compassionate release is accordingly foreclosed.[2] *See, e.g.*, *United States v. Walker*, No. CR 15-20262, 2025 WL 1419927, at *2 (E.D. Mich. May 16, 2025); *United States v. Carpenter*, No. 1:15-CR-26, 2025 WL 1413586, at *3 (S.D. Ohio May 15, 2025); *United States v. Pinke*, No. CR 7:09-

---

[2] Notably, even if *Bricker* did not invalidate § 1B1.13(b)(6), Defendant has not identified any "change in the law." He simply contends that "he would no longer be a career offender if sentenced today" and suggests he was "tricked into" accepting his career offender status when he pleaded guilty. ECF No. 87 at PageID.827–29. Moreover, even if he identified a change in the law applicable to his career-offender status, it remains unclear how this unidentified change would produce a gross sentencing disparity. True, Defendant's career offender status placed him in criminal history category VI. But so too did his base criminal history points, even when reduced by one point in light of Amendment 821. *See supra* Part II; *see also* ECF No. 93. And true, Defendant's career-offender status resulted in a default offense level of 37. PSR ¶ 32 (citing U.S.S.G. § 4B1.1). But Defendant's base offense level was 37, too. PSR ¶ 31.

001-DCR, 2025 WL 1600934, at *2 (E.D. Ky. June 5, 2025); *United States v. Davidson*, No. 3:08-CR-169, 2025 WL 1243902, at *4 (E.D. Tenn. Apr. 29, 2025).

### D. Sentencing Factors

Alternatively, even if Defendant's motion was not foreclosed and he had shown extraordinary and compelling reasons for his release, his release is not supported the 18 U.S.C. § 3553 sentencing factors.

The burden is on Defendant to "make a compelling case as to why the . . . § 3553(a) analysis would be different if conducted today." While this Court must consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a), it need not specifically articulate its analysis of every single § 3553(a) factor if the record as a whole demonstrates that the pertinent factors were taken into account." *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020).

The pertinent § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
        . . . .
(5) any pertinent policy statement—
        . . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Court has already sentenced Defendant after considering these factors. This "initial balancing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951 (6th Cir. 2021). And Defendant has not demonstrated any flaw in this Court's analysis.

The seriousness of Defendant's offense can hardly be understated. He "was involved in the distribution and possession of heroin on a large scale. [He] had multiple suppliers and sold to a number of individuals." PSR ¶ 99. His offense was far from victimless. *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) ("Society as a whole is the victim when illegal drugs are being distributed in its communities."). Indeed, Defendant "involved his 10-month-old son" in his distribution to "avoid detection." *Id.* Moreover, as explained, the instant offense occurred while Defendant was on parole from a prior conviction. *Id.* ¶ 44.

Defendant's criminal history is similarly serious. In the five years preceding the instant offense, Defendant amassed six adult convictions. *See id.* ¶¶ 37–42. Five involved controlled substances. *Id.* And the sixth arose after Defendant assaulted a police officer. *Id.* ¶ 40.

There's more. Defendant has served just over half of his 262-month sentence. *See* ECF No. 92-3 at PageID.913. Considering credits, the eight years remaining on his sentence weigh heavily against his pretrial release. Indeed, the Sixth Circuit has repeatedly affirmed denials of compassionate release under § 3553(a) when the defendant has a long remaining sentence because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a)(2)(A). *See United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020);

Yet Defendant argues the sentencing factors support his release because he has "engaged in numerous educational and rehabilitation programs" while confined. ECF No. 87 at PageID.832. But, although commendable, such engagement is neither extraordinary nor compelling—it is "expected." *Mahan v. Douglas,* 643 F.Supp.3d 783, 785 (E.D. Mich. Dec. 1, 2022). And it seems these efforts have not been fruitful. Defendant has been disciplined eight times while confined for—among other prohibited conduct—fighting and destroying property. *See* ECF No. 92-6.

On balance, the § 3553 sentencing factors do not favor Defendant's release. So, even if he had shown extraordinary and compelling reasons for his release, his motion for compassionate release would be denied.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion to Amend his Presentence Investigation Report, ECF No. 97, is **DENIED.**

Further, it is **ORDERED** that Defendant's Motion for Appointed Counsel to support his motion to amend, ECF No. 96, is **DENIED AS MOOT.**

Further, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 87, is **DENIED.**

Dated: July 25, 2025                            s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge